### GRANVILLE W. ALEXANDER

*v.*

### FRANCIS A. HOFFMAN *et al.*

1. PARTIES IN CHANCERY. The general rule is, that all parties in interest, and whose rights may be affected by a decree, must be made parties to the bill.

2. SAME—*bill for specific performance.* Where a party, claiming to have succeeded to the equitable rights of a purchaser of land, by sale on execution against him, seeks a specific execution of the contract against the vendor, the original purchaser is a necessary party to the bill.

3. WITNESS—*competency—against parties defending as heirs.* A person who is a necessary party to a bill, and who, if a party, would not be competent to testify as against parties defending as heirs, falls within the meaning of the statute, and will be treated as incompetent, the same as if he were a party to the suit.

4. SAME—*vendee, as against heirs of deceased owner, on bill for specific performance.* On bill for specific performance by a party succeeding to the rights of a vendee of land, against the trustee of the owner, and the heirs of the owner, to compel the execution of a deed, the vendee, whether

a party to the bill or not, is not a competent witness to prove payments to and conversations with the deceased owner or *cestui que trust* in his lifetime.

5. SPECIFIC PERFORMANCE—*delay and laches unexplained.* A court of equity will not lend its aid to enforce the specific performance of a contract, if the party seeking the aid of the court has been guilty of great delay in performing it, or in filing his bill, or in prosecuting his suit after the bill is filed.

6. Where a bill for the specific performance of a contract of sale was filed twelve years after the last payment became due, and ten years after the complainant acquired the vendee's interest, and the proof failed to show clearly that the deferred payments had ever been made: *Held*, that the bill was properly dismissed.

7. SAME—*discretionary with the court.* A bill for specific performance is addressed to the sound legal discretion of the chancellor, and although a legal contract may exist, it will not be decreed as a matter of course.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a bill in chancery, filed by Granville W. Alexander against Francis A. Hoffman and the heirs of Andrew J. Miller, deceased, for specific performance. The opinion of the court states the substance of the leading facts.

Messrs. GOOKINS & ROBERTS, and Messrs. LAWRENCE, WINSTON, CAMPBELL & LAWRENCE, for the appellant.

Mr. OBADIAH JACKSON, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in chancery, filed by appellant against appellees, to enforce the specific performance of a contract for the sale of a certain tract of land, in Chicago.

It is alleged in the bill, that Hoffman, who held the land in trust for one Andrew J. Miller, on the 16th day of October, 1854, sold it, by contract in writing, to one John Ades, for $1200, $400 paid down, $400 to be paid in one year, $200 in two years, and $200 in three years; property to be conveyed on payment of the purchase money; that Ades paid the purchase money to Hoffman and to Miller.

It is also alleged, that Joseph G. Alexander, in 1858, recovered a judgment in the Cook County Court of Common Pleas, against Ades; that an execution was issued on the judgment, upon which the land was sold by the sheriff to one Daniel B. Heartt, and, not having been redeemed, it was deeded to him by the sheriff; that Heartt conveyed to appellant.

This bill was filed May 27th, 1869. The answer admits Hoffman held the legal title, but that he held it as security for money Miller had borrowed of him; denies all knowledge of the contract between Hoffman and Ades; avers, if any such contract was made, it was long since abandoned by Ades, and forfeited and cancelled by Hoffman; insists that Ades is a necessary party to the bill, and the rights of the defendants can not be adjudged without he is made a party; denies all knowledge of the judgment or sale thereunder. The answer further states that, from 1852 until the time of his death, Miller was in possession of the property, claiming it as his own, and paid all taxes thereon; that appellees, his heirs, since his death, have continued in possession and paid all taxes, and are still in possession, claiming the land; insists that, from lapse of time, complainant's claim is stale, and, on that ground, ought not to be enforced.

Replication was filed, cause heard on proofs, and a decree entered dismissing the bill.

The first question presented for our consideration is, was Ades a necessary party to the bill?

The general rule is, all persons in interest, and whose rights may be affected, should be made parties to the bill.

The theory of complainants was, that Ades had purchased this land, and, at one time, held it by contract entitled to a deed. They say he never transferred his contract or conveyed the land, but it was taken from him by sale on execution issued on a judgment, and that they acquired his title in that way.

The defendants had a right to insist, before a decree should be rendered against them, that complainant should show a valid judgment and execution against Ades. It was clearly

the right of Ades to contest the validity of the judgment and execution. Unless the judgment and execution were valid, then complainant had no standing in court. The court, in passing upon their validity, would be adjudicating upon the rights of Ades, when he was not before the court. Had the court rendered a decree in favor of complainant, it would not have been binding on Ades. For aught that we see, he could, on the next day after the court had rendered a decree, file his own bill, and the same matters would have been subject to a readjudication.

The case of *Lane* v. *Erskine*, 13 Ill. 501, relied upon by appellant, is not decisive of this question.

In the case of *Packwood* v. *Gridley*, 39 Ill. 388, where a bill was filed for a specific performance, based upon a contract of sale, and where the vendor, subsequent to making sale by a contract, had conveyed the premises by deed, this court held, that the vendor was a necessary party, and while the question is not fully discussed in the opinion, we must regard it as authority in this case.

Ades being, then, a necessary party to the bill, the next point that presents itself is, was his evidence admissible, which related to payments made to and conversations with Andrew J. Miller, he being dead, and the suit predicated on a contract made by him, in his lifetime, against his legal representatives?

Section 1 of the law of 1867 provides, that parties to the record, and in interest, may testify. Section 2 of the same act declares, no party to any civil action, suit or proceeding, or person directly interested in the result thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as executor, administrator, heir, legatee or devisee of any deceased person, unless when called as a witness by such adverse party, etc., except in certain specified cases, but this evidence does not fall within any of the exceptions.

It is very clear, under this statute, had Ades been a party to the bill, his evidence could not have been admitted. The language of the section: *no party to any civil action, suit or proceeding, or person directly interested in the result thereof, shall be allowed to testify,* is not of doubtful meaning.

There is manifest justice in this statute. While both parties to a transaction are living, they are upon a perfect equality, and can each testify. When one is dead, the other is not permitted to give evidence, and thus take advantage of the heirs of the deceased, who are wholly ignorant of the facts.

Appellant can not have the benefit of the evidence of Ades on the ground that he was not a party to the record,— that would permit them to do, indirectly, what they could not do directly. The law required him to be made a party to the bill, and we will treat his evidence in the same manner as if he was a party.

This view of the case leaves the record in this position: About the middle of October, 1854, Ades took a contract of purchase for the land, paid $400 down, agreed to pay $400 in one, $200 in two, and $200 in three years. A deed was to be made when the whole purchase money was paid. The evidence fails to show the deferred payments have ever been made. Andrew J. Miller was in the possession of the land at the time of his death, in 1864, and appellees, his heirs, have held the possession ever since, and all the time claimed to own the land.

So far as the record shows, Ades has set up no claim to the land since 1857. The last act of his, from which we can infer he was claiming the land, is this: he testifies, in 1857 he paid the taxes for 1856. In this, however, he is evidently mistaken, for Mr. Jackson testifies, on examination of the record, in preparing a defense to the suit, he found the land was sold in 1857 for the taxes of 1856.

In 1858, the land was sold on the judgment. In fifteen months from that time, Heartt, who bid off the land for Alexander, was entitled to a deed, yet neither Heartt nor his

grantees are heard to set up any claim or title to the land, under this sale or otherwise, until 1869. The bill was filed in 1869, twelve years after the last payment was due on the contract, and ten years after complainant's title had matured on the judgment. This bill, filed against the heirs of Andrew J. Miller, to enforce a specific performance of the contract, was pending in the Superior Court until the December term, 1872, when a trial was finally had, and the bill dismissed. We are now asked by complainant to reverse this decree. This we can not do without violating all well settled principles of equity in this class of cases.

The *laches* of Ades, and complainant who claims under him, is inexcusable. Equity always discountenances *laches*. 1 Story Eq. Jur. sec. 64.

In *Milward* v. *The Earl Thanet*, 5 Vesey, 720, Lord ALVANLEY said: A party can not call upon a court of equity for a specific performance, unless he has shown himself ready, desirous, prompt and eager.

It may be regarded as well settled, that a court of equity will not lend its aid to enforce the specific performance of a contract, where the party seeking the aid of the court has been guilty of great delay in performing it, or in filing his bill to enforce it, or in prosecuting his suit after the bill has been filed. These facts constitute such *laches* as can not be overlooked by courts of equity. Fry on Specific Performance, 218; *Hough* v. *Coughlan et al.* 41 Ill. 134.

A bill for a specific performance is addressed to the sound legal discretion of the chancellor, and although a legal contract may exist, it will not be decreed as a matter of course. *Frisby* v. *Ballance*, 4 Scam. 287; *Hough* v. *Coughlan, supra.*

After a long period has elapsed, courts will be cautious in enforcing the specific performance of a contract, when there is any real doubt about its existence and terms, and especially where the contract is lost or destroyed. *Rector* v. *Rector*, 3 Gilman, 119.

We perceive nothing in this record which would warrant the court, in the exercise of a sound legal discretion, to decree a specific performance of the contract.

The decree of the Superior Court will be affirmed.

*Decree affirmed.*